No. 24-3684

# In the United States Court of Appeals for the Ninth Circuit

GREGG BUCHWALTER,
*Plaintiff-Appellant*,

v.

TWITTER, INC., et al.,
*Defendants-Appellees.*

On Appeal from the United States District Court
for the Central District of California
Case No. 2:22-cv-09438-AB-MAA
The Honorable Andre Birotte

## APPELLEES' JOINT MOTION FOR SUMMARY AFFIRMANCE

WILSON SONSINI GOODRICH & ROSATI
Brian M. Willen
Amit Q. Gressel
1301 Avenue of the America, 40th Fl.
New York, NY 10019-6022
bwillen@wsgr.com
(212) 999-5800

*Counsel for Appellees Google LLC,
YouTube, LLC, and Alphabet, Inc.*

## RULE 26.1 CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1, Appellees certify as follows:

- X Corp. is the successor in interest to named Defendant Twitter, Inc. Twitter Inc. has been merged into X Corp. and no longer exists. X Corp. is a privately held corporation. Its parent corporation is X Holdings Corp. No publicly traded corporation owns 10% or more of the stock of X Corp. or X Holdings Corp.

- Alphabet Inc. is a publicly traded company; no publicly traded company holds more than 10% of Alphabet Inc.'s stock. Google LLC is a subsidiary of XXVI Holdings Inc., which is a subsidiary of Alphabet Inc. YouTube, LLC is a subsidiary of Google LLC.

- Instagram LLC's parent company is Meta Platforms, Inc. Meta Platforms has no parent company. No other company owns 10% or more of the stock of Meta Platforms, Inc.

- Amazon.com, Inc., does not have any parent corporations and no publicly held corporation owns 10% or more of the stock of Amazon.com, Inc.

- Apple Inc. has no parent corporation and no publicly held corporation owns 10% or more of its stock.

- National School Boards Association does not have any parent corporations and no publicly held corporation owns 10% or more of the stock of National School Boards Association

- DNC Services Corporation does not have any parent corporations and no publicly held corporation owns any stock in DNC.

## TABLE OF CONTENTS

Page

BACKGROUND .................................................................................3

    Plaintiff's Allegations.....................................................................3

    The District Court's Dismissal Order.............................................5

    The Appeal......................................................................................7

ARGUMENT ....................................................................................7

    A.    Summary affirmance is warranted because an intervening
          Supreme Court ruling expressly rejected Plaintiff's sole theory
          of standing. ...........................................................................8

    B.    Summary affirmance is warranted because Plaintiff fails to
          sufficiently challenge the district court's holding that the
          complaint failed to state a claim for violation of the First
          Amendment ........................................................................13

CONCLUSION .................................................................................15

## TABLE OF AUTHORITIES

Page(s)

# CASES

*Already, LLC v. Nike, Inc.*,
　　568 U.S. 85 (2013)......................................................................12

*In re Online DVD-Rental Antitrust Litig.*,
　　779 F.3d 914 (9th Cir. 2015) ......................................................15

*In re Thomas*,
　　508 F.3d 1225 (9th Cir. 2007) .......................................................8

*Indep. Towers of Wash. v. Washington*,
　　350 F.3d 925 (9th Cir. 2003) ......................................................15

*Kleindienst v. Mandel*,
　　408 U.S. 753 (1972)......................................................................12

*Lujan v. Defenders of Wildlife*,
　　504 U.S. 555 (1992)......................................................................12

*M.A. Mobile Ltd. v. Indian Inst. of Tech., Kharagpur*,
　　2020 WL 2394903 (9th Cir. Mar. 25, 2020) ..................................8

*Morse v. N. Coast Opportunities, Inc.*,
　　118 F.3d 1338 (9th Cir. 1997) ....................................................14

*Murthy v. Missouri*,
　　144 S. Ct. 1972 (June 26, 2024) ...........................................*passim*

*Retlaw Broad. Co. v. NLRB*,
　　53 F.3d 1002 (9th Cir.1995) .......................................................15

*Simon v. E. Ky. Welfare Rights Org.*,
　　426 U.S. 26 (1976)........................................................................10

*Spokeo, Inc. v. Robins*,
　　578 U.S. 330 (2016)...............................................................8, 9, 10

*Summers v. Earth Island Inst.*,
　　555 U.S. 488 (2009)........................................................................9

*TransUnion LLC v. Ramirez*,
    594 U.S. 413 (2021) ............................................................................8

*United States v. Hooton*,
    693 F.2d 857 (9th Cir. 1982) ...........................................7, 8, 13

*United States v. Kama*,
    394 F.3d 1236 (9th Cir. 2005) .....................................................13

*Winsor v. Sequoia Benefits & Ins. Servs., LLC*,
    62 F.4th 517 (9th Cir. 2023) ..........................................................9

## STATUTES

42 U.S.C. § 1983 ....................................................................................5, 6, 14

52 U.S.C. § 10101 ..........................................................................................6

Cal. Civ. Code § 51 ..........................................................................5, 6, 7, 15

## RULES

Ninth Cir. R. 3-6(a) ...............................................................................2, 7, 13

Fed. R. App. P. 27 ...........................................................................................1

Appellees X Corp., Google LLC, YouTube, LLC, Alphabet, Inc., Meta Platforms, Inc., Instagram LLC, Amazon.com, Inc., Apple Inc., American Federation of Teachers, National Education Association, National School Boards Association, and DNC Services Corporation ("DNC"), (collectively "Appellees" or "Defendants") respectfully move for summary affirmance of the final judgment (Dkt. 110) granting Defendants' Motions to Dismiss (Dkt. 108), entered by the United States District Court for the Central District of California. Ex. 1 (C.D. Cal. March 28, 2024) ("Order"); Ex. 2 (C.D. Cal. Apr. 29, 2024) ("Judgment").[1]

Plaintiff-Appellant Gregory Buchwalter ("Plaintiff" or "Buchwalter"), proceeding *pro se*, alleges a widespread scheme by the federal government to collaborate with social-media platforms, other technology companies, and educational groups to supposedly censor ideas and content associated with "conservatives" or "MAGA Republicans." Compl. ¶¶ 24, 83. But Plaintiff does not allege that any of his own speech or online content was restricted. Instead, he claims his First Amendment rights were violated because the alleged scheme resulted in less conservative content being available on various online platforms. But Plaintiff does not allege he uses those platforms, much less that he has any concrete, specific connection to conservative speakers on those platforms, whose speech was

---

[1] Pursuant to FRAP 27(a)(2)(b)(iii), Appellees attach as Exhibit 1 a copy of the District Court Order being appealed.

1

supposedly restricted. The District Court rightly dismissed the Complaint without leave to amend, and this Court should summarily affirm that judgment.

This Court grants summary affirmance where "an intervening court decision or recent legislation requires affirmance" or where "it is manifest that the questions on which the decision in the appeal or petition for review depends are so insubstantial as not to justify further proceedings." Ninth Cir. R. 3-6(a)(1)–(2). Both are true here. After the District Court dismissed Plaintiff's complaint, the U.S. Supreme Court decided *Murthy v. Missouri*, 144 S. Ct. 1972 (June 26, 2024)—a case involving similar claims of online censorship by the federal government. In *Murthy*, the Supreme Court expressly rejected the very theory of Article III standing that underlies Plaintiff's claim here: that a plaintiff has standing to challenge the alleged restriction of *other people's speech*, where the plaintiff has no "concrete, specific connection" to that speaker, on the theory that there is a general First Amendment right to access or "listen to" certain viewpoints. *Murthy*, 144 S. Ct. at 1996.

*Murthy* alone requires affirmance, but Plaintiff's opening brief also fails to address the District Court's independent holding that Plaintiff's First Amendment claim (the only claim he raises on appeal) failed on the merits because Defendants are private parties, not state actors. Plaintiff's waiver of any challenge to that independent ground for dismissal renders his appeal manifestly insubstantial and further underscores why summary affirmance is warranted.

2

## BACKGROUND

### Plaintiff's Allegations

Plaintiff-Appellant Gregory Buchwalter[2] alleges that Defendants operated a "'vast Censorship Scheme' and in collusion with the Biden administration, suppressed conservative ideas and viewpoints." Order at 2. According to Plaintiff's Complaint, the scheme involved disparate groups of defendants: (1) online platforms (X, Meta, Instagram, Google, and YouTube) that allegedly removed or restricted user content on their platforms; (2) the "internet retail defendants" (Apple and Amazon) that allegedly censored unidentified "books, articles, movies, audios, and other communications written or published by conservative or 'disfavored' speakers" supposedly distributed on their platforms; (3) education defendants (the American Federation Teachers, the National Education Association, and the National School Boards Association) supposedly censoring parents' complaints regarding certain curriculum, and (4) the DNC, a national political party committee. Compl. ¶¶ 3–6.

---

[2] In the District Court, this case was brought by Buchwalter and two other individual plaintiffs: Richard Jackson and Julie Briggs. *See* Order at 2. Plaintiffs were initially represented by attorney Michael Reznick, but Reznick was suspended from practice before the District Court while the Motions to Dismiss were pending, and Plaintiffs thereafter proceeded *pro se*. *See id.* at 2 n.1. Reznick's appeal of his suspension was denied by this Court on October 25, 2024. *See* Case No. 23-3543, Dkt. 45-1. After the District Court granted final judgment dismissing Plaintiffs' claims for lack of standing and on the merits, only Buchwalter, still acting *pro se*, filed a notice of appeal. His appeal is limited to the dismissal of his individual First Amendment claim.

Plaintiff initially sought to represent a putative class of "more than 72 million registered Republicans nationwide who voted for someone other than President Biden and suffered and will continue to suffer irreparable harm by the Censorship Scheme" and "conservative leaning speakers and/or MAGA Republicans who chose to dispute, disagree, or challenge Democratic Party policies, dogma, and propaganda." Order at 3.[3] Plaintiff did not allege he used Defendants' platforms or products or services offered by Defendants, much less that he posted content available on (and censored by) those platforms. Nor did he allege that he ever authored, let alone sought to distribute, any book, movie or other media product through any distributor Defendant. *See* Order at 5. Instead, he alleged that Defendants had "censored" speech posted by *other people*, and he claimed injury as someone who wished to listen to or read content published by unidentified speakers. *E.g.*, Compl. ¶ 59 (alleging Buchwalter was injured by censorship that limited what he "chooses to read, see, say or hear in the public square").

Based on this theory, Plaintiff asserted a claim for violation of his First

_____

[3] The District Court struck Plaintiffs' class allegations after Reznick's suspension left the class without an adequate attorney. *See* Order at 3, n.3. The Court also held that even if an attorney had been available, the class allegations were not viable because the class definition created "an improper fail-safe in which the class is defined in terms that warrant a determination on the merits," because "typicality and adequacy" of the class were not established, and because the proposed class of 72 million voters made ascertainability impossible. *Id.* Plaintiff has not appealed the decision to strike the class allegations, and that issue is not before this Court.

Amendment rights (purportedly pursuant to 42 U.S.C. § 1983)—along with a grab-bag of other claims: for "election interference" under the Civil Rights Act of 1964, discrimination under the California Unruh Civil Rights Act, and injunctive and declaratory relief. Compl. ¶¶ 382–404.

The District Court's Dismissal Order

The District Court granted Defendants' Motion to Dismiss in full, holding that Plaintiffs failed to establish standing "on all fronts." Order at 5. The Court held that Plaintiffs' Complaint relied on "conclusory statements and legal conclusions about censorship" that did not establish standing. *Id.* Most relevant here, the Court rejected Plaintiffs' broad theory of listener-standing, explaining that "Plaintiffs cannot conjure standing on behalf of 'other Americans.'" *Id.* The Court further observed that Plaintiffs did not allege that they "were even users of any of the social media platforms or purchasers of Apple or Amazon products or services" and that (as to the education defendants), Plaintiffs "do not appear to be parents of any children currently or recently enrolled in public schools, are not board members, teachers, or otherwise connected to the public school system or populations served by those defendants." *Id*. In short, as to all the Defendants, including the online platforms, retail distributors, education entities, and the DNC, the Court explained, "Plaintiffs have failed to articulate any injury in fact or how any harm could be traced to the specific actions of any of the Defendants." *Id*.

After determining that Plaintiffs lacked standing, the Court then proceeded to address Plaintiffs' claims on the merits and held that each was subject to dismissal without leave to amend because they failed to state a claim. *Id*. at 6. For that reason, the Court dismissed the Complaint without leave to amend. *Id*.

With respect to Plaintiffs' First Amendment claim, raised under 42 U.S.C. § 1983, the Court determined that Plaintiffs failed to allege any conduct involving *state* law and *state* actors given that the Complaint focused upon the actions of *federal* actors under federal law. Order at 6. Even if the Complaint had alleged misconduct by state actors under state law, the Court noted that the "Complaint is still deficient for failure to plead how the actions of any private entities were so entangled with the government that they should be brought within the scope of § 1983." *Id*.

Plaintiffs fared no better with their Civil Rights Act claim. The claim under 52 U.S.C. § 10101 faltered for lack of state action, because "conservative viewpoints" do not invoke protections under the Civil Rights Act, and because the Complaint never alleged that any protections conferred under 52 U.S.C. § 10101 were violated. Order at 7.[4]

---

[4] The Court further noted that to the extent the Complaint could be construed as stating a claim for "election interference," it too failed because no viable grounds to state a claim were alleged. Plaintiff did, in fact, vote. Order at 7. There is no generalized claim for election interference under the Constitution. Any claim for violations of the Voting Rights Act—even if it had been alleged (it was not)—would fail given the absence of any allegation concerning racial discrimination. *See*

Finally, the Court dismissed Plaintiffs' California Unruh Act claim because "viewpoint discrimination is not covered" by that statute, no allegations of intentional or willful action against any of the Plaintiffs were pled, and, as to the educational defendants, they were not business entities. *Id.* at 8–9.

<u>The Appeal</u>

Only Buchwalter appealed, and his appeal, as defined by his opening brief, is limited to the District Court's ruling dismissing his First Amendment claim. Plaintiff's opening brief addresses almost exclusively his standing to assert that claim. Plaintiff fails to offer any meaningful response to the District Court's merits analysis of that claim nor any meaningful challenge to the District Court's dismissal of any of his other claims, whether based on standing or on the merits.

## **ARGUMENT**

At any time before briefing is complete, the Court may summarily dismiss an appeal where "an intervening court decision or recent legislation requires affirmance" or where it is "manifest" that the questions on appeal are so insubstantial that further proceedings are not justified. Ninth Cir. R. 3-6(a)(1)–(2); *United States v. Hooton*, 693 F.2d 857, 858 (9th Cir. 1982) (summary affirmance is warranted in "appeals obviously controlled by precedent and cases in which the insubstantiality is manifest

---

*generally* Compl. Furthermore, any equal protection claim failed because there were no allegations that any plaintiff was denied protection under the law. Order at 7, n.4.

from the face of appellant's brief"); *M.A. Mobile Ltd. v. Indian Inst. of Tech.*, *Kharagpur*, No. 20-15177, 2020 WL 2394903, at *1 (9th Cir. Mar. 25, 2020) (summarily affirming district court order). Here, an intervening—and on point—decision of the U.S. Supreme Court requires affirmance as to the central issue of Article III standing. In light of that ruling, and Plaintiff's failure to address the District Court's independent holding that Plaintiff's claims failed as a matter of law, it is clear, from even a "brief review" of the record, that "the outcome" of this case "is beyond dispute," such that "summary disposition is of obvious benefit to all concerned." *Hooton*, 693 F.2d at 858–59; *see also In re Thomas*, 508 F.3d 1225, 1227 (9th Cir. 2007).

### A.    SUMMARY AFFIRMANCE IS WARRANTED BECAUSE AN INTERVENING SUPREME COURT RULING EXPRESSLY REJECTED PLAINTIFF'S SOLE THEORY OF STANDING.

"To have Article III standing to sue in federal court, plaintiffs must demonstrate, among other things, that they suffered a concrete harm. No concrete harm, no standing." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 417 (2021); *accord Murthy v. Missouri*, 144 S. Ct. 1972, 1986 (2024) (plaintiff's injury must be "concrete, particularized, and actual or imminent"). "For an injury to be 'particularized,' it must affect the plaintiff in a personal and individual way." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 339 (2016) (cleaned up) (citing cases). "These requirements help ensure that the plaintiff has 'such a personal stake in the outcome

of the controversy as to warrant [her] invocation of federal-court jurisdiction.'" *Murthy*, 144 S. Ct. at 1986 (quoting *Summers v. Earth Island Inst.*, 555 U.S. 488, 493 (2009)). "Where, as here, a case is at the pleading stage, the plaintiff must 'clearly ... allege facts demonstrating' each element." *Spokeo*, 578 U.S. at 338.

As framed by Plaintiff's opening brief on appeal, the only issue before this Court is whether Buchwalter has Article III standing to assert a claim against Defendants for violation of his First Amendment rights based on allegations of "government-induced social-media censorship.'" Appellant's Br. at 15. But, as the District Court held, this claim suffers from an obvious problem: Plaintiff does not even allege he was a "user[] of any of the social media platforms or purchaser[] of Apple or Amazon products or services" or a "parent[] of any children currently or recently enrolled in public schools" served by those platforms, much less that he posted content to those platforms that was censored. Order at 5. Plaintiff thus made no viable allegation of direct injury to his First Amendment right to speak. *See, e.g.*, *Winsor v. Sequoia Benefits & Ins. Servs., LLC*, 62 F.4th 517, 523 (9th Cir. 2023) (no standing where plaintiffs did not allege facts demonstrating concrete injury).[5]

_____

[5] Insofar as Plaintiff suggests on appeal that he was directly injured by the purported censorship of his own content, he points to nothing in the Complaint alleging that any of his speech was restricted, and his brief offers no concrete assertions to support such a claim. Plaintiff cannot conjure up Article III standing without clearly alleging facts that support personal injury, and he has not done that here. *Spokeo*, 578 U.S. at 338. And, of course, the fact that the case was originally brought as a class action "adds

Nor does Plaintiff allege any cognizable injury under any recognized First Amendment theory. Instead, Plaintiff claims to have standing based on the idea that he was injured when other people's speech was supposedly censored on Defendants' platforms. Of course, because standing requires a "personal" injury, *Spokeo*, 578 U.S. at 340, Buchwalter cannot conjure up standing for himself based on purported censorship injuries suffered by other people with whom he has no specific or concrete connection. *See* Order at 5. Accordingly, Plaintiff's standing theory was premised on a so-called "right to listen," unconnected to specific speakers. Buchwalter contends he has a general First Amendment right to access or listen to others' speech favoring a particular ideology and that he was injured by Defendants supposedly "suppressing, preventing and denying Plaintiff[] access to any legitimate, genuine, newsworthy stories, articles or reports that favored President Trump." Compl. ¶ 79; *accord* Appellant's Br. at 15 (Buchwalter arguing on appeal that he has "lost the ability to enjoy free, fair, and open political processes" because of "censorship [that] is achieved through a wide variety of methods").

This theory was not tenable even before *Murthy*, as the District Court concluded in dismissing Plaintiffs' claims for lack of standing. Order at 4–5. But

---

nothing to the question of standing, for even named plaintiffs who represent a class 'must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong.'" *Id.* at 338 n.6 (quoting *Simon v. E. Ky. Welfare Rights Org.*, 426 U.S. 26, 40, n. 20 (1976)).

*Murthy* erased any doubt on that score, with the Supreme Court expressly rejecting the very same "right to listen" theory of First Amendment standing that Plaintiff presses here. The Supreme Court recognized that a cognizable injury may exist *only* where the listener "has a concrete, specific connection to the speaker," which Plaintiff lacks here. *Murthy*, 144 S. Ct. at 1996. *Murthy* involved similar allegations of a federal-government-backed effort to suppress conservative speech online, with the First Amendment claims directed at various federal government agencies and officials, rather than private companies. The plaintiffs were individuals and States, who claimed Article III "standing based on the 'direct censorship' of their own speech *as well as* their 'right to listen' to others who faced social-media censorship." *Id.* at 1986 (emphasis added). After finding that even the plaintiffs whose own content was removed had not viably alleged standing (for lack of causation and redressability), the Court categorically rejected the "right to listen" theory where, as here, plaintiff had no connection to the allegedly censored content:

> The individual plaintiffs claim an interest in reading and engaging with the content of other speakers on social media. The First Amendment, they argue, protects that interest. Thus, the plaintiffs assert injuries based on the restrictions that countless other social-media users have experienced.
>
> This theory is startlingly broad, as it would grant all social-media users the right to sue over *someone else's* censorship—at least so long as they claim an interest in that person's speech. This Court has "never accepted such a boundless theory of standing." *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 99, 133 S. Ct. 721, 184 L.Ed.2d 553 (2013). While we have recognized a "First Amendment right to 'receive information

and ideas,'" we have identified a cognizable injury only where the listener has a concrete, specific connection to the speaker. *Kleindienst v. Mandel*, 408 U.S. 753, 762, 92 S. Ct. 2576, 33 L.Ed.2d 683 (1972).[6] …

Attempting to satisfy this requirement, the plaintiffs emphasize that hearing unfettered speech on social media is critical to their work as scientists, pundits, and activists. But they do not point to any specific instance of content moderation that caused them identifiable harm. They have therefore failed to establish an injury that is sufficiently "concrete and particularized." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992).

*Murthy*, 144 S. Ct. at 1996.

This intervening ruling by the Supreme Court categorically precludes the only theory of Article III standing underlying Buchwalter's First Amendment claim in this case. Like the *Murthy* plaintiffs, Buchwalter does not identify (in his pleadings or any of his briefs before either the District Court or this Court) any specific instance of content moderation that caused him identifiable harm as a listener, nor does he identify any "concrete, specific connection" to any speaker who was supposedly censored by any of the Defendants. His undifferentiated assertion that he suffered a First Amendment injury by generally being denied access to "newsworthy stories, articles or reports that favored President Trump" is precisely the kind of vague

---

[6] For example, in *Mandel*, the plaintiffs—all university professors who had invited Mandel, a Belgian scholar, to participate in academic forums or other discussions—alleged that their First Amendment rights were infringed by Mandel's visa denial, "because they wish[ed] to hear, speak, and debate with Mandel in person." 408 U.S. at 762.

assertion of generalized harm—neither concrete nor particularized—that does not satisfy Article III. The Supreme Court has squarely rejected this "boundless theory of standing," and *Murthy* requires affirmance of the District Court's Order doing the same.

**B.      SUMMARY AFFIRMANCE IS WARRANTED BECAUSE PLAINTIFF FAILS TO SUFFICIENTLY CHALLENGE THE DISTRICT COURT'S HOLDING THAT THE COMPLAINT FAILED TO STATE A CLAIM FOR VIOLATION OF THE FIRST AMENDMENT.**

Even if *Murthy* did not foreclose Plaintiff's sole basis for asserting standing, summary affirmance is warranted here because Plaintiff fails to meaningfully address—and hence has forfeited—the other independent ground the Court relied upon to dismiss the Complaint: It failed to state a claim. *See, e.g.*, *United States v. Kama,* 394 F.3d 1236, 1238 (9th Cir. 2005) ("Generally, an issue is waived when the appellant does not specifically and distinctly argue the issue in his or her opening brief."); *see also* Ninth Cir. R. 3-6(a)(1)–(2) (summary affirmance is warranted where "it is manifest that the questions on which the decision in the appeal or petition for review depends are so insubstantial as to not justify further proceedings"); *cf. Hooton*, 693 F.2d at 859 (district court's denial of appellant's motion for reduction of sentence summarily affirmed where "insubstantiality of the appeal" appeared on "the face of appellant's brief").

On the merits, the District Court dismissed Plaintiff's First Amendment claim

without leave to amend because: (1) the Complaint was bereft of any allegations that state actors acted under state law and (2) even if such allegations had been made, there were insufficient allegations to establish why state action should be attributed to the private Defendants. Order at 6. Plaintiff acknowledges these holdings but curiously offers no defense other than the following: "Standing alone, the First Amendment to the United States Constitution, without more, provides ample support for Plaintiff's censorship and election interference claim and requires reversal regardless of the absence of a California or other state actor forcing the Defendants to do their bidding." Appellant's Br. at 4. Plaintiff provides nothing more than bare argument to support this view and cites no caselaw. This omission is unsurprising because it is black-letter law that a Section 1983 claim does not lie against federal actors. *See Morse v. N. Coast Opportunities, Inc.*, 118 F.3d 1338, 1343 (9th Cir. 1997) ("by its very terms, § 1983 precludes liability in federal government actors"). In any event, Plaintiff also fails to address the Court's *separate* finding that there are insufficient allegations to attribute any state action—even if such action had occurred—to the Defendants.

Plaintiff also offers no meaningful challenge to the District Court's rulings on his other claims. Plaintiff fails entirely to address the District Court's grounds for dismissing the California Unruh Act claim. As for the Civil Rights Act claim, he again offers nothing more than unadorned argument—simply querying, if the conduct

alleged "is not actionable under the First Amendment, then what is the point?" Appellant's Br. at 5.

Given this flimsy attempt, unsupported by any case law or meaningful discussion, Plaintiff has waived his ability to appeal the District Court's independent grounds for dismissing his Complaint for failure to state a claim. *See In re Online DVD-Rental Antitrust Litig*., 779 F.3d 914, 930 (9th Cir. 2015) ("cursory mention" of issue is insufficient to preserve the issue for appeal); *Indep. Towers of Wash. v. Washington*, 350 F.3d 925, 929–30 (9th Cir. 2003) ("[T]he Federal Rules of Appellate Procedure require the opening brief to contain the 'appellant's contentions and the reasons for them, with citations to the authorities and parts of the record on which the appellant relies.' Fed. R. App. P. 28(a)(9)(A). We require contentions to be accompanied by reasons."); *Retlaw Broad. Co. v. NLRB*, 53 F.3d 1002, 1005 n.1 (9th Cir.1995) ("Although the issue ... is summarily mentioned in [appellant's] opening brief, it has not been fully briefed, and we therefore decline to address it.").

## <u>CONCLUSION</u>

For the foregoing reasons, Appellees respectfully request the Court summarily affirm the final judgment of the District Court.

Respectfully submitted,

Dated:  October 29, 2024      WILSON SONSINI GOODRICH & ROSATI
         Professional Corporation

     By: ___*/s/ Brian M. Willen*___
         Brian M. Willen

15

Amit Q. Gressel
1301 Avenue of the America, 40th Fl.
New York, NY 10019-6022
bwillen@wsgr.com
(212) 999-5800

*Counsel for Appellees Google LLC,*
*YouTube, LLC, and Alphabet, Inc.*

KEKER, VAN NEST & PETERS LLP

By: ___ */s/ Paven Malhotra*
Paven Malhotra
Matan Shacham
633 Battery Street
San Francisco, CA 94111-1809
pmalhotra@keker.com
mshacham@keker.com
(415) 391-5400

*Counsel for Appellees Meta Platforms, Inc.*
*(formerly known as Facebook, Inc.);*
*Instagram LLC*

DAVIS WRIGHT TREMAINE LLP

By: */s/ Ambika Kumar*
Ambika Kumar
920 Fifth Avenue, Suite 3300
Seattle, Washington 98104
Tel: (206) 757-8030
ambikakumar@dwt.com

Scott R. Commerson
865 South Figueroa Street, 24th Floor
Los Angeles, California 90017-2566
Tel: (213) 633-6890

Chelsea T. Kelly

16

1301 K Street NW, Suite 500 East
Washington, D.C. 20005
Tel: (202) 973-4200
chelseakelly@dwt.com

*Counsel for Appellee Amazon.com, Inc.*

JENNER & BLOCK LLP

By: ___*/s/ David R. Singer*
    David R. Singer
     *Counsel of Record*
    2029 Century Park East
    Suite 1450
    Los Angeles, California 90067
    213-239-2206
dsinger@jenner.com

 William R. Weaver
 Illyana A. Green
 Jenner & Block LLP
 1099 New York Avenue NW Suite 900
 Washington, DC 20001
 (202) 639-6000

 Isabel F. Farhi
 Jenner & Block LLP
 1155 Avenue of the Americas
 New York, NY 10036
 (212) 891-1600

 *Counsel for Appellee Apple Inc.*

KAUFMAN LEGAL GROUP, APC

By: ___*/s/ Stephen J. Kaufman*
Stephen J. Kaufman
skaufman@kaufmanlegalgroup.com
Gary S. Winuk, Bar No. 190313
gwinuk@kaufmanlegalgroup.com

17

777 S. Figueroa Street, Suite 4050
Los Angeles, CA 90017
Tel: (213) 452-6565

*Counsel for Defendant DNC Services*
*Corporation*

MCGUIREWOODS LLP

By:   */s/ Jonathan Y. Ellis*
Jonathan Y. Ellis
501 Fayetteville Street, Suite 500
Raleigh, North Carolina 27601
Telephone: (919) 755-6688
E-Mail: jellis@mcguirewoods.com

Kathryn M. Barber
Gateway Plaza
800 East Canal Street
Richmond, VA 23219-3916
(804) 775-1227
kbarber@mcguirewoods.com

*Attorneys for X Corp., successor in interest*
*to named defendant Twitter, Inc.*

WILSON ELSER MOSKOWITZ
EDELMAN & DICKER LLP

By:   */s/ Ian A. Stewart*
Ian A. Stewart, Esq.
Adam E. Wayne, Esq.
555 South Flower Street, Suite 2900
Los Angeles, California 90071-2407
Telephone:(213) 443-5100
Ian.Stewart@wilsonelser.com
Adam.Wayne@wilsonelser.com

*Counsel for Appellees National School*
*Boards Association*

18

ROTHNER, SEGALL & GREENSTONE

By: ___/s/ Glenn Rothner_
Glenn Rothner
510 South Marengo Avenue
Pasadena, CA 91101
Telephone: (626) 796-7555
grothner@rsglabor.com

*Attorney for Defendants*
*American Federation of Teachers and*
*National Education Association*

## CERTIFICATE OF COMPLIANCE

Pursuant to Fed. R. App. P. 32(g), I certify as follows:

1. This Motion for Summary Affirmance complies with the type-volume limitation of Fed. R. App. P. 27(d)(2)(A) because this brief contains 3,781 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f); and

2. This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word 365, the word processing system used to prepare the brief, in 14 point font in Times New Roman font.

Dated: October 29, 2024                              By: */s/ Brian M. Willen*
                                                         Brian M. Willen

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system on October 29, 2024.

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system, except for service via U.S. Mail to:

Gregg Buchwalter
[Pro Se]
283 Ocho Rios Way
c/o M. Reznick
Oak Park, CA 91377

Dated: October 29, 2024                    By: */s/ Brian M. Willen*            _
                                               Brian M. Willen

# Exhibit 1

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

| | | | |
|---|---|---|---|
| Case No.: | 2:22-cv-09438-AB-MAA | Date: | March 28, 2024 |

| | |
|---|---|
| Title: | *Richard Jackson et. al. v. Twitter, Inc. et al.* |

| | |
|---|---|
| Present: The Honorable | **ANDRÉ BIROTTE JR., United States District Judge** |

| | |
|---|---|
| Carla Badirian | N/A |
| Deputy Clerk | Court Reporter |

| | |
|---|---|
| Attorney(s) Present for Plaintiff(s): | Attorney(s) Present for Defendant(s): |
| None Appearing | None Appearing |

**Proceedings:** **[In Chambers] ORDER GRANTING APPLE INC.'S MOTION TO DISMISS (DKT. 34); GRANTING AMERICAN FEDERATION OF TEACHERS' AND NATIONAL EDUCATION ASSOCIATION'S MOTION TO DISMISS (DKT 41); GRANTING NATIONAL SCHOOL BOARDS ASSOCIATION'S MOTION TO DISMISS (DKT. 48); GRANTING DNC SERVICES CORPORATION'S MOTION TO DISMISS (DKT. 51); GRANTING AMAZON.COM, INC.'S MOTION TO DISMISS (DKT. 53); GRANTING X CORP.'S MOTION TO STRIKE CLASS ACTION (DKT. 55); GRANTING META PLATFORMS, INC., INSTAGRAM, LLC, GOOGLE LLC, ALPHABET, INC., AND X CORP.'S MOTION TO DIMISS AND MOTION TO STRIKE (DKT. 56)**

//
//
//
//

CV-90 (12/02)                    CIVIL MINUTES – GENERAL                    Initials of Deputy Clerk CB

Before the Court are numerous motions to dismiss and motions to strike filed by Defendants in this case, Apple, Inc. ("Apple"), the American Federation of Teachers ("AFT") and the National Education Association ("NAE"), the National School Boards Association ("NSBA"), DNC Services Corporation ("DNC"), Amazon.com, Inc., X Corp (as successor to Twitter, Inc.), Meta Platforms, Inc., Instagram, LLC, Google LLC, and Alphabet, Inc. *See* Dkts. 34, 41, 48, 51, 53, 55, and 56. Plaintiffs[1] oppose each. *See* Dkt. 97 ("Opposition"). The Court head oral argument on March 8, 2024, and took all matters under submission. For the following reasons, the Court hereby **GRANTS each motion without leave to amend.**[2]

I.      **Background**

This suit arises from allegations that the Defendants, as part of a "vast Censorship Scheme" and in collusion with the Biden administration, suppressed conservative ideas and viewpoints by falsely labeling certain content as "dis-information, mis-information, and mal-information". *See* Dkt. 1 ("the Complaint", or "Compl."). Based upon the Complaint and the Opposition, the alleged scheme may be further subdivided as involving the education defendants and the DNC for the censorship of parents' complaints regarding certain curriculum, the social media companies for censorship of posts and content on their internet platforms,

---

[1] The original plaintiffs in this complaint were Richard Jackson, Julie Briggs, and Gregg Buchwalter. These plaintiffs were represented by attorney Michael E. Reznick. Mr. Reznick was suspended from practice before the United States Bankruptcy Court for the Central District of California and was subsequently suspended from practice before this Court by Chief Judge Philip S. Gutierrez. *See In Re Michael Reznick,* AD-23-00001-PSG (May 8, 2023). Following a series of status conferences, Mr. Reznick indicated to the Court his intention to appeal his suspension, and to proceed in this matter as a plaintiff and that plaintiffs would proceed *pro se,* including in filing their Opposition to the instant motions. However, as of the date of the hearing on the present matter, Mr. Reznick has not formally entered himself as a party to this suit. Furthermore, Mr. Reznick, as an "observer", and Richard Jackson, as a plaintiff, were the only two non-Defendants at the March 8, 2024, hearing. They represented to the Court that Julie Briggs is no longer a plaintiff to this lawsuit, and that Greg Buchwalter has been non-responsive.

[2] X Corp's Amended Notice of Motion (Dkt. 90), NSBA's Amended Notice of Motion (Dkt. 91), and Meta Platform's Amended Notice of Motion (Dkt. 93) are also granted.

and the retail distributors for censorship of books, movies, and other media. Plaintiffs complain of five causes of action: one claim via 42 U.S.C. §1983 for violation of the First Amendment ("censorship and suppression of protected speech"), one claim for violation of the Civil Rights Act of 1964 ("election interference"), one claim for violation of the California Unruh Civil Rights Act, and claims for injunctive and declaratory relief.

Plaintiffs filed this lawsuit individually and on behalf of a putative class of similarly situated individuals, including "more than 72 million registered Republicans nationwide who voted for someone other than President Biden and suffered and will continue to suffer irreparable harm by the Censorship Scheme" and "conservative leaning speakers and/or MAGA Republicans who chose to dispute, disagree, or challenge Democratic Party policies, dogma, and propaganda." Plaintiffs concede that the class action cannot be maintained without an attorney representing the putative class. *See* Opposition at FN 2, Page 5. Therefore, the motion to strike class claims (Dkt. 55) is **GRANTED** and all class claims are hereby **DISMISSED**.[3]

Defendants challenge the Complaint on numerous grounds, namely lack of standing for failure to allege an injury in fact, failure to plead state action within the meaning of § 1983 and the Civil Rights Act, and failure to identify themselves with a protected class.
//

---

[3] Even if Plaintiffs had not conceded that the class action cannot be maintained without an attorney, Plaintiffs' class allegations would not have survived. First, Plaintiffs' class definition creates an improper fail-safe in which the class is defined in terms that warrant a determination on the merits. Indeed, the class includes those who were harmed by the alleged censorship scheme, which requires a determination of the very wrong at issue, i.e., whether there was a scheme that hurt the Plaintiffs. Additionally, typicality and adequacy of the class representatives fail because Plaintiffs do not allege their specific harm. Plaintiffs do not allege that they were users of the social media sites whose posts were removed, purchasers of Apple or Amazon services or products, or even parents. Furthermore, the proposed class fails the ascertainable requirement because its overly broad and nearly impossible to identity over 72 million voters in a democracy in which ballots are confidential. Finally, the Court does not find that there is a common question of law and fact because this case involved three separate censorship schemes and numerous defendants which would require individual inquiry.

//
//
//

## II.      Legal Standard

Defendants move under various provisions of Federal Rule of Civil Procedure 12(b). ("Rule 12(b)").

Rule 12(b)(1) allows for dismissal for lack of subject matter jurisdiction when plaintiffs lack Article III standing. *See Maya v. Centez Corp.*, 658 F.3d 1060, 1067 (9th Cir. 2011). To survive a Rule 12(b)(1) motion to dismiss, a plaintiff bears the burden of establishing standing.

Rule 12(b)(6) allows for dismissal as a matter of law when a complaint lacks a cognizable legal theory or lack sufficient facts to allege a cognizable legal theory. *See Semerjyan v. SEIU Loc. 2015*, 489 F. Supp. 3d 1048, 1054 (C.D. Cal. 2020). *Ashcroft* requires that a plaintiff plead factual content that allows a court to draw reasonable inferences that the defendant is liable for the misconduct alleged. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Defendants also challenge the 135-page Complaint for failure to comply with the requirement that it be "a short and plain statement of the claim showing that the pleader is entitled to relief" and contain allegations that are "simple, concise, and direct." *See* Rule 8(a) and 8(d).

## III.     Discussion

### Plaintiffs Lack Standing

To establish Article III standing to sue, plaintiffs must demonstrate that they 1) suffered an injury in fact, 2) that is fairly traceable to the challenged conduct of the defendant, and 3) that the harm is likely to be redressed by a favorable judicial decision. *See O'Handley v. Weber*, 62 F.4th 1145, 1161 (2023) (internal quotations omitted). A concrete injury in fact may be financial or nonfinancial, tangible, or intangible, but it must be "real, and not abstract". *LLC v. Ramirez*, 594 U.S. 413, 424 (2021). "Only those plaintiffs who have been concretely harmed by a defendant's statutory violation may sue that private defendant over that violation in federal court…Article III grants federal courts the power to redress harms that defendants cause plaintiffs, not a freewheeling power to hold defendants accountable for legal infractions." *Id*. at 427. Traceability and redressability are

two facets of the causation requirement; the former "examines the connections between the alleged misconduct and injury, whereas redressability analyzes the connection between the alleged injury and requested judicial relief." *Washington Env't Council v. Bellon*, 732 F.3d 1131, 1146 (9th Cir. 2013).

Here, Plaintiffs fail on all fronts. Plaintiffs' Complaint relies on conclusory statements and legal conclusions about censorship, stating "private party defendants have taken actions and engaged in conduct under color of law to do that which the Biden Administration is constitutionally prohibited from doing for itself…suppressing lawfully protected speech of Plaintiffs…and other Americans with whom they disagree, for the purpose of punishing the political enemies of the Democratic Party and DNC." Compl. ¶ 382. In addition to the conclusory nature of these allegations, Plaintiffs cannot conjure standing on behalf of "other Americans".

Furthermore, Plaintiffs allege their voting rights were harmed and interfered with but concede that they voted and do not allege with sufficient specificity *how* their voting was interfered with. *See* Compl. ¶ 388. Plaintiffs allege that they sustained economic damage but say nothing about who lost what or when. *See* Compl. ¶ 384. Plaintiffs say they "were arbitrarily denied full and equal access to the private party 'Platform' Defendants' goods and internet services and privileges by virtue of their Censorship Scheme simply because of their political affiliation and in particular, because they disagree with Biden Administration policies and mandates, are registered Republicans or have political opinions favored by conservatives rather than Left wing Democrats…" but do not allege that any of the Plaintiffs themselves were even users of any of the social media platforms or purchasers of Apple or Amazon products or services. *See* Compl. ¶ 395. Of the few social media posts included in the Complaint, none of them were made by the Plaintiffs. Finally, Plaintiffs make a series of allegations against education organizations like the NSBA and AFT, but do not appear to be parents of any children currently or recently enrolled in public schools, are not board members, teachers, or otherwise connected to the public school system or populations served by those defendants.

To summarize, Plaintiffs have failed to articulate an injury in fact or how any harm could be traced to the specific actions of any of the Defendants. For these reasons alone, the motions to dismiss (Dkts. 34, 41, 48, 51, 53, and 56) are **GRANTED**.

//
//

//

**Dismissal without Leave to Amend is Warranted**

Even if Plaintiffs were to establish standing or had they complied with F.R.C.P. 8(a), there are numerous deficiencies with the Complaint that warrant dismissal **WITHOUT LEAVE TO AMEND.**

*42 U.S.C. § 1983 Claim Fails as a Matter of Law*

First, to the extent that Plaintiffs allege any wrongdoing, such wrongdoing relates to the Defendants' interactions with the federal government. Indeed, Plaintiffs do not offer any allegations involving state law or state actors. To bring a claim for §1983, defendants must have been acting under the color of state law. *See* 42 U.S.C. § 1983 ("Every person who, *under color of any statute… of any State* … subjects…any citizen of the United States …to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law…") (emphasis added). The Ninth Circuit has affirmed that § 1983 provides no cause of action against federal agents acting under the color of federal law. *Magassa v. Mayorkas*, 52 F.4th 1156, 1163 (9th Cir. 2022).

What's more, even if Plaintiffs had identified a state law or state actor with which defendants were under the guise of, their Complaint is still deficient for failure to plead how the actions of any of the private entities were so entangled with the government that they should be brought within the scope of § 1983. *See O'Handley v. Weber*, 62 F.4th 1145, 1164 (9th Cir. 2023)(affirming district court's dismissal of all federal claims against Twitter because the company was neither a state actor nor a co-conspirator with state officials acting with the shared goal of violating constitutional rights). Thus, the first cause of action fails as a matter of law as to each defendant and is therefore **dismissed without leave to amend.**

//
//
//
//
//
//
//
//
//

//

//

*Civil Rights Act Claim Fails as a Matter of Law*[4]

The voting provisions of the Civil Rights Act, which are codified in 52 U.S.C. § 10101, generally prohibit discriminatory practices that affect voting. These provisions also require that defendants acted under the color of state law, and as previously noted, Plaintiffs fail to plead any state action or law.

Moreover, the voting rights provisions are implicated in matters involving a plaintiff's "race, color, or previous condition of servitude". *See* 52 U.S.C. § 10101. Plaintiffs do not allege any discrimination based on these protected classes, and "conservative viewpoints" do not invoke Civil Rights Act protections.

Finally, the Civil Rights Act prohibits defendants from employing "standards, practices, or procedures" inconsistently based on race, from "deny[ing] the right of any individual to vote in any election", or "employ[ing] any literacy test as a qualification for voting in any election…" *See* 52 U.S.C. § 10101. The Act further prohibits "intimidation, threats, or coercion". Nothing in the Complaint alleges activity that falls within the first three prohibited categories, and nothing in the Complaint suggests that Plaintiffs were intimidated, threatened, or coerced

---

[4] The cover page of the Complaint states that the second cause of action as "Violation of Federal Civil Rights Act of 1964 (Election Interference)". However, later in the Complaint, the second cause of action states "…for violation of the Civil Rights Act of 1964 and the United States Constitution for election interference" *See* Compl. at Page 128. As described in this Order, the Civil Rights Claim fails as a matter of law. To the extent that Plaintiffs intended the Court to consider a claim for "election interference" under the Constitution generally, such a claim would fail as well. First, there is no generalized "election interference" claim under the Constitution. There are violations for protections conferred by the Voting Rights Act, which is not plead, and even if it were, the Voting Rights Act applies to race discrimination. *See* 52 U.S.C. § 10301. The Fifth and Fourteenth Amendments' equal protection analysis, which the Ninth Circuit assess similarly, *see United States v. Carrillo-Lopez*, 68 F.4th 1133, 1139 (9th Cir. 2023), requires a showing that the defendants "invidiously" discriminated between individuals or groups and those individuals or groups were denied equal protection under the law. *See id*. The second cause of action does not identify any law the Plaintiffs were denied protection under and as discussed elsewhere in this Order, the Plaintiffs voting rights were not interfered with given the fact that each of them voted.

---

away from voting – in fact, Plaintiffs stated that they did vote. Thus, the **second cause of action fails as a matter of law as to each defendant and is therefore dismissed without leave to amend.**

### *California Unruh Claim Fails as a Matter of Law*

The California Unruh Civil Rights Act was "enacted to secure within [California's] state law the prohibition against discrimination by privately owned services and enterprises the United States Supreme Court referenced in the *Civil Rights Cases* and which the common law had already begun to recognize through the public service doctrine." *Brennon B. v. Superior Court of Contra Costa Cnty.,* 57 Cal.App.5th 367, 372 (Cal.App. 1 Dist., 2020) (internal citations omitted). To be sure, the Unruh Civil Rights Act applies to business establishments, and California courts have rejected the expansion of the Act to entities that are not business establishments, such as public-school districts. *See id.* at 379 ("Thus, there is nothing in the legislative history of the Unruh Civil Rights Act, itself, that suggests the Act was intended to reach discriminatory conduct by state agents, such as public-school districts, and, again, there is much to indicate otherwise.")

Like the federal Civil Rights Act, the California Unruh Act also is limited in its application the certain characteristics – "sex, race, color, religion, ancestry, national origin, disability, medical condition, genetic information, marital status, sexual orientation, citizenship, primary language, or immigration status". *See* Cal.Civ.Code § 51(b).

Finally, the Ninth Circuit has affirmed that non-disability based claims under the Unruh Act require a showing of intentional discrimination. *Greater Los Angeles Agency on Deafness, Inc. v. Cable News Network, Inc.,* 742 F.3d 414, 425 (9th Cir. 2014) ("Thus, to establish a violation of the Unruh Act independent of a claim under the Americans with Disabilities Act, [the plaintiffs] must plead and prove intentional discrimination in public accommodations in violation of the terms of the Act."). The California Supreme Court has held that the Unruh Act contemplates "willful, affirmative misconduct on the part of those who violate the Act" and that a plaintiff must therefore allege, and show, more than the disparate impact of a facially neutral policy. *Koebke v. Bernardo Heights Country Club*, 36 Cal. 4th 824, 115 P.3d 1212, 1228 (2005).

Applying the above framework to the instant matter, the third cause of action fails the to meet the basic requirement of the Act: viewpoint discrimination is not

covered. Second, at least as it relates to the education related defendants, the AFT and NSBA, the Unruh Claim additionally fails as those are not business establishments. Finally, ignoring the conclusory allegations, the Complaint fails to plead any intentional and willful action against any of the Plaintiffs specifically. Thus, the **third cause of action fails as a matter of law as to each defendant and is therefore dismissed without leave to amend.**

### IV.    Conclusion

Because there are no remaining claims, the Court need not address the request for injunctive or declaratory relief. *See Neerman v. Cates*, 2022 WL 18278377 *6 (C.D.Cal. 2022) (dismissing requests for declaratory and injunctive relief when underlying substantive claims were dismissed because neither declaratory nor injunctive relief were independent causes of action).

While a district court should grant plaintiffs leave to amend if the complaint can be cured by additional factual allegations, dismissal without leave to amend is appropriate where, as it is here, the complaint cannot be saved by amendment. As explained throughout this Order, even without regard to the pleading deficiencies, each of the Plaintiffs' claims still fail as a matter of law. Therefore, the Court hereby **GRANTS** the motions to dismiss**,** Dkts. 34, 41, 48, 51, 53, and 56. Amazon's Motion to Strike, Dkt. 55, is also **GRANTED**. With no remaining claims or defendants, all dates and deadlines in this matter are vacated and this case is hereby dismissed without prejudice.

The Defendants are ordered to file a Proposed Judgment within 7 days of the issuance of this Order. Plaintiffs have 5 days thereafter to object as to form.

**IT IS SO ORDERED**.